No. 23-1710

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

MARCEL NICOLE INGRAM,

Plaintiff-Appellant,

v.

THE HONORABLE GEORGE DUNBAR, in his individual capacity, THE HONRABLE ERIC DAVANZO, in his individual capacity, JACOB SMELTZ, in his individual capacity, JORDAN GOUKER, in his individual capacity, WILLIAM SCHALLER, in his individual capacity, LISA ZAUCHA, in her individual capacity, ALICIA MCGHEE, in her individual capacity, JILL VECCHIO, ESQ., in her individual capacity, and CANDACE MITCHELL, in her individual capacity,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 2:22-cv-01594

---

**BRIEF OF APPELLANT and JOINT APPENDIX VOL. 1 (Appx1-12)**

---

Nicholas W. Kennedy, Esquire
PA ID No. 317386
Quatrini Law Group
550 East Pittsburgh Street
Greensburg, PA 15601
(724) 837-0080
nwk@qrlegal.com
*Attorney for Appellant*

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF ISSUES PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF RELATED CASES AND PROCEEDINGS** . . . . . . . . . . . . 3

**STANDARD OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   **I.**    **Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  **II.**    **Procedural History**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**SUMMARY OF THE ARUGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   **A. Ms. Ingram's mold-related speech was made as a citizen** . . . . . . . . . . . 14

     **1.**  **The district court failed to conduct a particularized examination of each category of Ms. Ingram's speech** . . . . . . . . . . . 16

     **2.**  **The district court made improper findings of fact** . . . . . . . . . . . . . .17

     **3.**  **The district court failed to cite and apply controlling legal precedent regarding an employee's job duties to the factual allegations contained within the First Amended Complaint** . . . . . . .18

   **B. With a reversal of the district court's Order, supplemental jurisdiction should be exercised** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

**CERTIFICATE OF COMPLIANCE WITH RULE 32A** . . . . . . . . . . . . . . . .25

**CERTIFICATION OF BAR MEMBERSHIP**. . . . . . . . . . . . . . . . . . . . . . . . .25

**CETRIFICATION OF TEXT OF E-BRIEF**. . . . . . . . . . . . . . . . . . . . . . . . . .25

**CERTIFICATION OF VIRUS CHECK** . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Dahlia v. Rodriguez,* 735 F.3d 1060 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . .21

*Fenico v. City of Phila.,* 70 F.4th 151 (3d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . 4, 17

*Flora v. Cty. of Luzerne*, 776 F.3d 169 (3d Cir. 2015) . . . . . . . . 4, 14, 15, 17, 20, 22

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Javitz v. Cty. of Luzerne*, 940 F.3d 858 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . .18

*Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*,

   776 F.2d 443 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Tayoun v. City of Pittston*, 39 F. Supp. 3d 572 (M.D. Pa. 2014) . . . . . . . . . . . . . .21

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 P.S. § 1423(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. On April 13, 2023, the district court entered an Order dismissing the First Amended Complaint, with no opportunity to amend. Ms. Ingram filed a timely Notice of Appeal on April 17, 2023 to the district court's Order. This Court has jurisdiction to review the district court's Order pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED[1]

1.    Did the district court err in concluding that Ms. Ingram's First Amended Complaint failed to state a claim of retaliation under the First Amendment because her speech was made as an employee of the Pennsylvania House Republican Caucus rather than as a citizen?

2.    Did the district court err in refusing to exercise supplemental jurisdiction over Ms. Ingram's claim under the Pennsylvania Whistleblower Law?

---

[1] These issues were raised at Appx35-41, objected to at Appx69-83, and ruled on at Appx2-3.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

Ms. Ingram filed an action in the Commonwealth Court of Pennsylvania against the Pennsylvania House Republican Caucus, asserting a claim of retaliation under the Pennsylvania Whistleblower Law.  Its caption is *Marcel Nicole Ingram v. Pennsylvania House Republican Caucus,* 546 MD 2022.

## <u>STANDARD OF REVIEW</u>

This Court reviews "a district court's grant of a motion to dismiss *de novo*. 'Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility.'" *Fenico v. City of Phila.*, 70 F.4th 151,161 (3d Cir. 2023) (citations omitted). "The district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

## STATEMENT OF THE CASE

### I.    Factual Background

In March 2020, Ms. Ingram's employer, the Pennsylvania House Republican Caucus ("HRC"), assigned her to serve as Pennsylvania State Representative Eric Davanzo's District Office Manager.  Appx19 at ¶11.  Ms. Ingram worked at Rep. Davanzo's district office, located at 119 N. Water Street, West Newton, PA 15089 ("District Office").  Appx19 at ¶13.  The District Office is open to the public, and constituents frequently stop by for assistance on a range of matters.  Appx19 at ¶14.

In May 2022, Ms. Ingram began smelling odors in the District Office that became so intense that they burned her eyes and caused her headaches.  Appx19 at ¶¶15-16.  Ms. Ingram's coworker noted similar symptoms.  *Id.*  Ms. Ingram reported the odors, and the related health effects, to Rep. Davanzo multiple times. Appx19 at ¶17; Appx20 at ¶¶20, 28.  In response to Ms. Ingram's reports, Rep. Davanzo repeatedly referred her to the District Office's landlord, Joyce Pawlik. Appx20 at ¶20.  Following Rep. Davanzo's advice, Ms. Ingram made multiple complaints to Ms. Pawlik regarding the odors and also reported evidence of flooding, which did not yield relief from the odors.  Appx20 at ¶¶21-25.

On June 6, 2022, Ms. Ingram reported the flooding and odors in the District Office to Lisa Zaucha, the Southwest Regional Coordinator of District Operations for the HRC.  Appx19 at ¶7; Appx20 at ¶26.  Ms. Ingram did not receive a

response from Ms. Zaucha to that report.  Appx20 at ¶27.  On July 7, 2022, Ms.

Zaucha emailed Ms. Ingram to follow up on the "mold situation."  Appx20 at ¶29.

Ms. Ingram responded to that email by describing the continued presence of the

odors for Ms. Zaucha.  Appx20 at ¶30.  In reply, Ms. Zaucha stated that she

discussed the situation with James Mann, HRC's Senior Deputy Chief Counsel,

who advised the purchase of mold test kits to check the District Office for the

presence of mold.  Appx20 at ¶31; Appx21 at ¶32.  Ms. Zaucha reported Mr.

Mann's directions to Ms. Ingram, calling them "good advice," and told Ms. Ingram

that she would be reimbursed for purchasing the mold tests.  Appx21 at ¶33.  In

response, Ms. Ingram purchased two Healthful Home mold tests.  Appx21 at ¶34.

On July 12, 2022, Ms. Ingram noticed a mold-like substance growing in the

District Office's air vents and used the mold tests in the District Office, which

came back positive for Aspergillus/Penicillium and Stachybotrys.  Appx21 at ¶¶35-

37.  Both types of mold are linked to negative health impacts, including those

experienced by Ms. Ingram, and created an unclean, unsafe, unsanitary, and

unhealthy working environment.  Appx21 at ¶38.  Ms. Ingram's job duties did not

include testing for mold and reporting on its presence.  Appx21 at ¶39.  The

District Office's landlord was responsible for maintaining the District Office, along

with Ms. Zaucha, who oversaw the District Office's operations.  Appx21 at ¶40.

Ms. Ingram informed Rep. Davanzo of the positive mold test results when

he arrived at the District Office on July 12, 2022, in order to protect herself, her

6

colleagues, and Rep. Davanzo's constituents. Appx21 at ¶41. Upon learning of the positive mold tests, Rep. Davanzo angrily asked Ms. Ingram, "Who the fuck gave you permission to do this?" Appx21 at ¶42. In response, Ms. Ingram told Rep. Davanzo about Ms. Zaucha's emailed directive, which contained Mr. Mann's instructions. Appx22 at ¶44. Rep. Davanzo then claimed that he was not aware of the problem and accused Ms. Ingram of "opening a can of worms." Appx22 at ¶45.

On July 13, 2022, Rep. Davanzo sent a profanity-laced email to Jacob Smeltz, Chief of Staff to the Speaker of the Pennsylvania House of Representatives, Jordan Gouker, Director of Operations and Financial Management for the HRC, William Schaller, District Operations Director for the HRC, and Pennsylvania State Representative George Dunbar in which he chastised Ms. Ingram. Appx18 at ¶¶2, 4-5; Appx19 at ¶6; Appx22 at ¶46; Appx32-33. In the email, Rep. Davanzo reported that the District Office's landlord was responsible for investigating, addressing, and reporting back on problems related to the District Office. Appx32. According to Rep. Davanzo, the chain of command for office-related complaints involved contacting Rep. Davanzo first, and then he would direct communications with the landlord. *Id.*

Rep. Davanzo provided the following description of that complaint process:

One of the days a water line broke in the laundromat. Keep in mind this is a slab on grade. I'm not sure if the water came under the wall and into the [sic] my office or not, but either way the wall plate got wet.

7

My staff called and told me and I said to call the landlord.  Fast forward
a week or so and my staff called and said the smell is back, I said call
the landlord.  The landlord came out and took care of the problem.

*Id.*  Rep. Davanzo later said, "I am lost at what to do, if one of my staff would [sic]

came to me and said I don't feel safe or I'm sick I would [sic] went to the landlord,

but what do we do now?"  *Id.*

Rep. Davanzo went on to express his anger at Ms. Ingram's speech, which

consisted of her complaints to Ms. Zaucha about mold-related office issues, her

report of the positive mold tests, and her conversations with the District Office's

landlord regarding mold remediation.  *Id.*  Rep. Davanzo addressed Ms. Ingram's

speech in the following manner:

Fast forward to yesterday, I walk into the office and my staff hands me
Generic mold test [sic].  They said hey we have mold [sic] ! I said who
told you to take these test [sic] and why?  They replied that they
contacted Lisa Zaucha who then contacted Jim Mann and asked him
what to do.  Jim Mann instructed them to go and get a mold test…Nikki
Ingram my COS and Lisa didn't think to call me?  This is fucking
bullshit and unacceptable!  They went behind my back and pulled this
bullshit!  Now I have Nikki giving the landlord instructions on how to
remedy the problem!  WTF is a mold expert?   I am fucking pissed!

*Id*.  He later added, "Lisa and Nikki mentioned tearing the drywall off the

walls!"  *Id.*

Rep. Davanzo concluded the email with the following paragraph:

 I am just pissed the fuck off, I do not wish to have Nikki Ingram work
for me anymore and quite frankly I don't care if Lisa Zaucha joins her!
This is just unacceptable!  Now we are going to have to move offices?
Show me one building from the 50s that doesn't have a trace of mold
in it, what's next, The asbestos floor tile adhesive?   It's not going to

8

end, we've opened a can of worms! I will no longer work with these
two, I will shut my office down first!

Appx32-33.

Rep. Davanzo expressed no concern about the risk that the mold presented to
his staff and constituents. Appx23 at ¶50. In a reply email, Mr. Smeltz assured
Rep. Davanzo that his problem was "being addressed" and referred to Ms.
Ingram's actions as "Totally unacceptable." Appx34. On July 19, 2022, Ms.
Ingram received a text message from Ms. Zaucha requesting a meeting to discuss
"what's been going on over there." Appx23 at ¶57. Mr. Gouker started the
meeting by informing Ms. Ingram that the HRC terminated her employment.
Appx23 at ¶61. Mr. Gouker claimed that Rep. Davanzo made the decision due to a
"clash of personalities" and wanted to go in another direction. Appx24 at ¶63. In a
subsequent termination letter, Mr. Gouker changed the basis for Ms. Ingram's
termination by citing "issues previously discussed with you by Lisa Zaucha and
Representative Davanzo." Appx24 at ¶64. In response to Ms. Ingram's
unemployment compensation filing, the HRC reported to the Office of
Unemployment Compensation that it fired Ms. Ingram for rule violations of its
conduct/discipline and annual leave policies. Appx24 at ¶66.

## II.    Procedural History

Ms. Ingram filed her First Amended Complaint on February 6, 2023.
Appx17-34. The First Amended Complaint asserted causes of action for violations

9

of 42 U.S.C. § 1983, due to the deprivation of Ms. Ingram's First Amendment rights, and the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a).  Appx17-34. Defendants filed their Motion to Dismiss Amended Complaint on February 21, 2023, and Brief in Support on February 22, 2023.  Appx35-41; Appx42-68.  Ms. Ingram filed her Brief in Opposition to Defendants' Motion to Dismiss on March 14, 2023.  Appx69-87.  Defendants filed their Reply Brief in Support of the Motion to Dismiss the Amended Complaint on March 28, 2023.  Appx88-95.

On April 13, 2023, the district court entered an Order granting Defendants' Motion to Dismiss, with no leave for Plaintiff to amend the First Amended Complaint.  Appx2-3.  The district court declined to exercise jurisdiction over Ms. Ingram's Pennsylvania Whistleblower Law claims.  Appx2-3.  The district court's reasoning is contained within the April 13, 2023 Memorandum Opinion.  Appx4-12.  Ms. Ingram filed a timely Notice of Appeal on April 17, 2023.  Appx1.

## SUMMARY OF ARGUMENT

In granting Defendants' Motion to Dismiss, the district court committed multiple errors that require reversal of its Order.  First, the district court failed to consider each specific category of Ms. Ingram's speech.  Rep. Davanzo connected three different categories of Ms. Ingram's speech to her termination, which consist of (1) her reports to Ms. Zaucha of mold-related issues, (2) her announcement of the positive mold test results, and (3) her conversations with the District Office's landlord regarding mold remediation.  The district court was required to conduct a particularized examination of each category, which it failed to do.  Instead, the district court only examined Ms. Ingram's reports to Ms. Zaucha.  By failing to consider the totality of Ms. Ingram's speech, the district court committed a reversible error.

Next, the district court made findings of fact regarding Ms. Ingram's job duties that were not proper in resolving a Motion to Dismiss.  For purposes of a First Amendment analysis, the scope of an individual's job duties is a question of fact.  In the First Amended Complaint, Ms. Ingram alleged that her job duties did not include reporting on mold-related matters.  Instead of accepting that allegation as true, as it was required to do, the district court held to the contrary, another reversible error.

Finally, the district court failed to cite and apply the controlling legal precedent to Ms. Ingram's factual allegations.  To evaluate whether speech was

made as a citizen or an employee, courts are required to determine whether the speech at issue was made pursuant to the job duties that an employee is paid to perform on an **ordinary** basis.  Instead of applying that rule, the district court held that Ms. Ingram spoke as an employee for the following reasons: Ms. Zaucha ordered Ms. Ingram to take the mold tests, Ms. Ingram's "decision" impacted the HRC's employees, and Ms. Ingram's speech "related to" matters within the scope of her employment.  Each holding is an inaccurate application of the law.

Ms. Zaucha's one-time directive to perform an action does not place Ms. Ingram's complaints to Ms. Zaucha within Ms. Ingram's ordinary job duties.  Additionally, that directive only came after Ms. Ingram's complaints.  The district court described Ms. Ingram's reports of mold-related issues as being made up the chain of command.  Rep. Davanzo's profane statements regarding Ms. Ingram's speech, including accusations of Ms. Ingram going behind his back, paired with content of the speech itself, demonstrate that Ms. Ingram's speech did not occur up the chain of command or within her ordinary job duties.

The district court never defined Ms. Ingram's "decision" that impacted the HRC's employees, nor does the law provide for an impact analysis when evaluating ordinary job duties.  Finally, the district court applied a "related to" standard that has been squarely rejected by this Court.  In its application of the "related to" standard, the district court failed to identify the specific duties of Ms. Ingram's position that included the speech at issue.

All of these errors require the reversal of the district court's Order granting Defendants' Motion to Dismiss.  With the reversal, the district court should exercise supplemental jurisdiction over the related Pennsylvania Whistleblower Law claim.

## **ARGUMENT**

The district court's Rule 12(b)(6) dismissal of Ms. Ingram's First

Amendment Retaliation claim should be reversed due to multiple errors in the

district court's Opinion.  With the reversal of the district court, supplemental

jurisdiction should be exercised over Ms. Ingram's Pennsylvania Whistleblower

Law claim against Defendants.

### **A. Ms. Ingram's mold-related speech was made as a citizen.**

When Ms. Ingram spoke regarding mold-related matters impacting the

District Office, she spoke as a citizen and not an employee.  In granting

Defendants' Motion to Dismiss, the district court failed to conduct a particularized

examination of each category of Ms. Ingram's speech, made improper findings of

fact regarding Ms. Ingram's job duties, and failed to cite and apply controlling

precedent to the facts presented in the First Amended Complaint and its

attachments.  These errors warrant reversal of the district court's Order.

"To establish a First Amendment retaliation claim, a public employee must

show that his speech is protected by the First Amendment and that the speech was

a substantial or motivating factor in what is alleged to be the employer's retaliatory

action." *Flora*, 776 F.3d at 174.  "A public employee's statement is protected by

the First Amendment when: "(1) in making it, the employee spoke as a citizen, (2)

the statement involved a matter of public concern, and (3) the government

employer did not have an adequate justification for treating the employee

differently from any other member of the general public as a result of the statement he made.'" *Id.* at 175.  In granting Defendants' Motion to Dismiss, the district court focused on the first element of protected speech and held that Ms. Ingram's speech was made as an employee, not a citizen.  Appx10-11.

A review of the speech that led to Ms. Ingram's retaliatory termination is the starting point for evaluating the district court's Order.  Exhibit B to the First Amended Complaint contains Rep. Davanzo's statements linking Ms. Ingram's speech to the decision to terminate her.  Appx32-33.  In the paragraph that begins with "Fast forward to yesterday," Rep. Davanzo expresses his anger at Ms. Ingram's speech and later in the email demands her termination.  *Id.*

Ms. Ingram's speech can be divided into three categories.  The <u>first category</u> (chronologically) consists of Ms. Ingram's complaints to Ms. Zaucha regarding mold-related issues in the office, which led to the mold tests being taken.  Appx32.  *See also* Appx20 at ¶¶26-27, 29-31; Appx21 at ¶¶32-37.  Rep. Davanzo provided the following account of that speech: "They [Ms. Ingram] replied that they contacted Lisa Zaucha who then contacted Jim Mann and asked him what to do.  Jim Mann instructed them to go and get a mold test."  Appx32.  The <u>second category</u> is Ms. Ingram's speech announcing the positive mold test.  Appx32; Appx21 at ¶¶41-42.  According to Rep. Davanzo, that speech consisted of "hey we have mold [sic]!"  Appx32.  The <u>third category</u> covers Ms. Ingram's speech to the District Office's landlord regarding mold remediation.  Appx32.  *See also* Appx22

15

at ¶48.  Rep. Davanzo summarized that speech as follows: "Now I have Nikki giving the landlord instructions on how to remedy the problem!" and "Lisa and Nikki mentioned tearing the drywall off the walls!"  Appx32.

### 1. The district court failed to conduct a particularized examination of each category of Ms. Ingram's speech.

The district court, in its Opinion, connected the following activities to Ms. Ingram's job duties:

> Ms. Ingram informed Representative Davanzo multiple times about the foul-smelling odor in the District Office.  After reporting the odors up the HRC chain-of-command, Mr. Mann and Ms. Zaucha directed Ms. Ingram to purchase mold test kits and test the office for mold.  Mr. Mann and Ms. Zaucha told Ms. Ingram that the HRC would reimburse her for the cost of the mold test kits.  While at work on July 12, 2022, Ms. Ingram conducted the mold tests at the District Office, which eventually came back positive.  All such activities occurred within the context of Ms. Ingram's job as Representative Davanzo's District Office Manager.

Appx10-11.  Many of those activities do not constitute speech.  Of the activities listed that are speech, only Ms. Ingram's first category of speech (complaints to Ms. Zaucha) is addressed by the district court.  The district court failed to analyze the second category (announcement of the positive mold tests) and third category (conversations re: mold remediation) of Ms. Ingram's speech to determine whether that speech was made as citizen or employee.  This absence is a fatal error requiring reversal of the district court's Order.  *See Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985) (A court

"must conduct a particularized examination of each activity for which the protection of the First Amendment is claimed.").

## 2. The district court made improper findings of fact.

The district court's determination that Ms. Ingram's first category of speech occurred within the context of her job duties required the district court to make findings of fact, which cannot be done in resolving a motion to dismiss. *Flora*, 776 F.3d at 175. "[T]he scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." *Id*. As pleaded in the First Amended Complaint, Ms. Ingram's job duties did not include reporting on mold-related matters. Appx21 at ¶39. The district court was required to accept that factual allegation as true. *See Fenico,* 70 F.4th at 161. Accepting that factual allegation as true would prevent a finding that Ms. Ingram's first category of speech was made pursuant to her job duties.

Ms. Ingram's first category of speech consists of reports to Ms. Zaucha of mold-related issues in the District Office, including flooding and odors, and those reports fall squarely into the speech that Ms. Ingram pleaded was not part of her job duties. Appx21 at ¶39. The district court relied on "undisputed record evidence" to decide that the scope of Ms. Ingram's job included her first category of speech, even though the "record" consists of the First Amended Complaint. Appx10. In making that holding, the district court inherently made impermissible findings of fact regarding Ms. Ingram's job duties. *See Flora*, 776 F.3d at 175.

17

**3. The district court failed to cite and apply controlling legal precedent regarding an employee's job duties to the factual allegations contained within the First Amended Complaint.**

To evaluate the citizen vs. employee speech distinction, the district court was required to analyze whether Ms. Ingram's speech was made pursuant to those duties that she was "paid to perform on an ordinary basis." *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 866 (3d Cir. 2019). If the speech at issue was not made pursuant to the individual's job ordinary duties, then the individual spoke as a citizen. *Id.* In holding that Ms. Ingram's speech was made as an employee, the district court made the following determinations:

> Ms. Ingram was ordered to conduct the mold tests with the permission of her superiors at the HRC. Ms. Ingram's decision impacted the employees at Representative Davanzo's District Office. Ms. Ingram's speech directly related to matters within the scope of her position as a HRC employee.

Appx11. Those determinations reflect a failure to apply the controlling precedent to Ms. Ingram's factual allegations and each is addressed below.

First, Ms. Zaucha's directive to take mold tests occurred after Ms. Ingram's first category of speech. Appx20 at ¶¶26-27, 29-31; Appx21 ¶¶32-33. The district court failed to explain how that after-the-fact directive to act placed Ms. Ingram's first category of speech within her ordinary job duties. Also, the district court did not explain how a one-time directive places speech within an employee's ordinary job duties. *See Javitz*, 940 F.3d at 866. As described above, the district court did

not analyze the other categories of Ms. Ingram's speech, including the impact of Ms. Zaucha's directive on that speech.

The district court also referred to Ms. Ingram's first category of speech as involving reports "up the HRC chain-of-command," which ultimately resulted in her being "ordered" to purchase and use the mold tests. Appx10.  Rep. Davanzo's own words demonstrate that Ms. Ingram's speech was not made pursuant to her ordinary job duties and was not made up the HRC chain of command.  In his July 13, 2022 email, Rep. Davanzo reported that the District Office's landlord was responsible for investigating, addressing, and reporting back on problems related to the District Office.  Appx32.  According to Rep. Davanzo, the chain of command for office-related complaints involved contacting Rep. Davanzo first and then he would direct communications with the landlord.  *Id.*  Rep. Davanzo stated the following on these topics:

> One of the days a water line broke in the laundromat.  Keep in mind this is a slab on grade.  I'm not sure if the water came under the wall and into the [sic] my office or not, but either way the wall plate got wet. My staff called and told me and I said to call the landlord.  Fast forward a week or so and my staff called and said the smell is back, I said call the landlord.  The landlord came out and took care of the problem.

*Id*.  Rep. Davanzo later said, "I am lost at what to do, if one of my staff would [sic] came to me and said I don't feel safe or I'm sick I would [sic] went to the landlord, but what do we do now?"  *Id*.

In the beginning, Ms. Ingram made mold-related complaints to Rep. Davanzo. Appx19 at ¶17; Appx20 at ¶20. Those complaints did not remedy the problems. Appx20 at ¶22. As a result, Ms. Ingram went outside of the chain of command and reported the mold-related issues to Ms. Zaucha. Appx20 at ¶¶26, 30. By going outside of Rep. Davanzo's chain of command, Ms. Ingram's first category of speech to Ms. Zaucha was made as a citizen as it was not part of her ordinary job duties. *See Flora*, 776 F.3d at 180. The complaints to Ms. Zaucha then triggered the mold tests, which led to Ms. Ingram's further protected speech (categories 2-3), all of which was not pursuant to Ms. Ingram's ordinary job duties. Appx21 at ¶¶34-42; Appx22 at ¶¶43,48. A finding that Ms. Ingram's speech (categories 1-3) occurred outside of her job duties is clear from the vitriol Rep. Davanzo expressed in his July 13, 2022 email.

Rep. Davanzo made the following statements regarding Ms. Ingram's protected speech:

> Fast forward to yesterday, I walk into the office and my staff hands me Generic mold test [sic]. They said hey we have mold [sic] ! I said who told you to take these test [sic] and why? They replied that they contacted Lisa Zaucha who then contacted Jim Mann and asked him what to do. Jim Mann instructed them to go and get a mold test…Nikki Ingram my COS and Lisa didn't think to call me? This is fucking bullshit and unacceptable! They went behind my back and pulled this bullshit! Now I have Nikki giving the landlord instructions on how to remedy the problem! WTF is a mold expert? I am fucking pissed!

Appx32. All three categories of Ms. Ingram's speech are captured in that paragraph and all three are subject to Rep. Davanzo's anger because Ms. Ingram

did not call him first, went behind his back, and spoke to the landlord out of turn. Additionally, Ms. Ingram alleged that in response to her speech reporting the positive mold tests (second category), Rep. Davanzo responded, "Who the fuck gave you permission to do this." Appx21 at ¶42. Rep. Davanzo's statements are direct evidence that Ms. Ingram did not follow his chain of command and exceeded her ordinary job duties. Contrary to being part of her job duties, Ms. Ingram's speech was categorized as being "Totally unacceptable," according to Mr. Smeltz in his reply to Rep. Davanzo's July 13, 2022 email. Appx34.

Rep. Davanzo's anger alone, as expressed in the First Amended Complaint and its attachments, is proof that Ms. Ingram's speech was not made pursuant to her job duties. *See Dahlia v. Rodriguez,* 735 F.3d 1060, 1075 (9th Cir. 2013) ("Indeed, the fact that an employee is threatened or harassed by his superiors for engaging in a particular type of speech provides strong evidence that the act of speech was not, as a 'practical' matter, within the employee's job duties.").

Ms. Ingram's speech to the District Office's landlord regarding mold remediation (third category) was made to an outside party, which clearly places that speech outside of her ordinary job duties. *Tayoun v. City of Pittston*, 39 F. Supp. 3d 572, 579 (M.D. Pa. 2014) ("If however a public employee takes his job concerns to persons outside the work place [sic] in addition to raising them up the chain of command at his workplace, then those external communications are

ordinarily not made as an employee, but as a citizen.") (citation omitted) (internal quotation marks omitted).

Next, the district court's reference to a "decision" by Ms. Ingram that impacted the HRC's employees does not include a citation to legal authority to support a holding that an impact analysis is conducted as part of evaluating the scope of an employee's ordinary job duties. Appx11. The mere fact that Ms. Ingram's speech could have impacted her colleagues does not place that speech within her ordinary job duties. *See Flora*, 776 F.3d at 180 ("While certain statements in Flora's complaint do suggest that the speech at issue…may have, indirectly, benefitted his clients, that does not bring the speech within the realm of his ordinary job duties.") Furthermore, the district court never defined the "decision" in question. Appx11.

Finally, the "related to" standard applied by the district court has been squarely rejected by this Court. Appx11. *See Flora*, 776 F.3d at 179 ("*Garcetti* alone should have steered it [the court] away from applying the 'related to' standard."). Simply because Ms. Ingram's speech "related to" her workplace is nondispositive for resolving First Amendment questions. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("The memo concerned the subject matter of Ceballos' employment, but this, too, is nondispositive."). The district court failed to identify a single job duty of Ms. Ingram's position that encompassed the speech at issue, which reflects its application of the incorrect "related to" standard.

Because of the facts presented in the First Amended Complaint, it is not possible to hold that Ms. Ingram's job duties included her first category of speech. There are no factual allegations to support the conclusion that Ms. Ingram was paid to make complaints to Ms. Zaucha regarding mold-related issues as part of her ordinary job duties. That same analysis applies to Ms. Ingram's second and third categories speech. There is no evidence to support a holding that Ms. Ingram was paid to report the results of mold tests, nor discuss mold remediation with the District Office's landlord.

## B. With a reversal of the district court's Order, supplemental jurisdiction should be exercised.

Ms. Ingram's Pennsylvania Whistleblower Law claim is related to her First Amendment claim in that they form part of the same case or controversy under Article III of the Constitution of the United States. As a result, supplemental jurisdiction is warranted and should be exercised under 28 U.S.C. § 1367 with a reversal of the district court's Order.

## <u>CONCLUSION</u>

For all the reasons described above, this Court should reverse the

Order of the district court and remand the case for further proceedings consistent

therewith.

<div align="center" style="float:right">

/s/ *Nicholas W. Kennedy*
Nicholas W. Kennedy, Esquire
PA ID No. 317386

Quatrini Law Group
550 East Pittsburgh Street
Greensburg, PA 15601
(724) 837-0080
nwk@qrlegal.com

*Attorney for Appellant*

</div>

## CERTIFICATE OF COMPLIANCE WITH RULE 32A

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,895 words excluding the parts of the brief exempted by Fed. R. App. P.32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P.32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2305) in font size 14, font style Times New Roman.

## CERTIFICATATION OF BAR MEMBERSHIP

I certify that I am a member in good standing of the bar of the U.S. Court of Appeals for the Third Circuit.

## CERTIFICATION OF TEXT OF E-BRIEF

I certify that the text of the E-Brief and the text of the hard copies of Appellant's brief are identical.

## CERTIFICATION OF VIRUS CHECK

I certify that a virus check was performed on the .PDF file of Appellant's brief.  The virus software used was Webroot Endpoint Protection.

Dated: <u>July 10, 2023</u>                /s/ *Nicholas W. Kennedy*
                                        Nicholas W. Kennedy, Esquire
                                        PA ID No. 317386

                                        Quatrini Law Group
                                        550 East Pittsburgh Street
                                        Greensburg, PA 15601
                                        (724) 837-0080
                                        nwk@qrlegal.com

                                        *Attorney for Appellant*

25

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing **BRIEF OF APPELLANT** and **JOINT APPENDIX** with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by the using the appellate CM/ECF System. Participants in the case are registered CM/ECF users and service will also be accomplished by the appellate CM/ECF system on July 10, 2023.

M. Abbegael Giunta, Esquire
McKnees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101
agiunta@mcneeslaw.com
*Attorney for Appellees*

/s/ *Nicholas W. Kennedy*
Nicholas W. Kennedy, Esquire
PA ID No. 317386

Quatrini Law Group
550 East Pittsburgh Street
Greensburg, PA 15601
(724) 837-0080
nwk@qrlegal.com

*Attorney for Appellant*