No. 23-1710

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

MARCEL NICOLE INGRAM,

Appellant,

v.

THE HONORABLE GEORGE DUNBAR, et al.,

Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 2:22-CV-1594

---

**BRIEF FOR APPELLEES**

---

M. Abbegael Giunta
Pa. I.D. 94059
Adam L. Santucci
Pa. I.D. 307058
McNees Wallace & Nurick LLC
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
*Counsel for Appellees*

## TABLE OF CONTENTS

STATEMENT OF THE CASE.................................................................1

   I.  Background ........................................................................1

   II. Procedural History ............................................................2

SUMMARY OF ARGUMENT ........................................................3

ARGUMENT ...................................................................................6

   I.  Jurisdiction And Standard of Review .....................................6

   II. Ingram's Speech Is Not Protected by the First Amendment ...............7

      A.  Ingram's speech regarding workplace concerns was pursuant to her official duties as a public employee ...................7

         i.  The District Court conducted a particularized examination of Ingram's speech ............................................8

         ii. The District Court did not make improper findings of fact ................................................................10

         iii. The District Court applied controlling legal precedent ......12

      B.  Ingram was not speaking on a matter of public concern............15

   III. The District Court properly declined to exercise supplemental jurisdiction .................................................16

   IV. The House Officials are immune from suit in federal court pursuant to the Whistleblower Law....................................19

CONCLUSION...............................................................20

# TABLE OF AUTHORITIES

**Cases**

Aguilar v. Pa. Apple Marketing Program,
No. 1:05-CV-0804, 2006 U.S. Dist. LEXIS 96074 (M.D. Pa. Jan. 19, 2006) .......................................................................................... 19

Animal Science Products, Inc. v. China Minmetals Corp.,
654 F.3d 462 (3d Cir. 2011) ........................................................ 10

Arrington v. Commonwealth House of Representatives,
No. 10-CV-2248, 2010 U.S. Dist. LEXIS 119315 (M.D. Pa. Nov. 10, 2010) ......................................................................................... 19

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................ 10

Borough of West Mifflin v. Lancaster, 45 F.3d 780 (3d Cir. 1995)....................... 16

Bradley v. W. Chester Univ. of the Pa. State System of Higher Educ.,
182 F.Supp. 3d 195 (E.D. Pa. 2016)......................................... 5, 20

Brown v. Card Serv. Ctr.,
464 F.3d 450 (3d Cir. 2006) ..............................................................6

Colorado River Water Conservation District v. United States,
414 U.S. 800 (1986).................................................................5, 17

Connick v. Myers, 461 U.S. 138 (1983) ............................................. 4, 7

De Ritis v. McGarrigle, 861 F.3d 444 (3d Cir. 2017) ...................................... 4, 14

Dennis v. City of Philadelphia, 19 F.4th 279 (3d Cir. 2021).....................................9

Gaj v. United States Postal Service, 800 F.2d 64 (3d Cir. 1986) ..................... 4, 16

Garcetti v. Ceballos, 547 U.S. 410 (2006)............................................. 7, 13, 14, 15

Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009) .................................... 16

Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006) .................................... 7

In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198 (3d Cir. 2002) ................... 6

Ingram v. Pennsylvania House Republican Caucus,
    No. 546 MD 2022 (Cmwlth. Ct.).................................................. 17

Javitz v. County of Luzerne, 940 F.3d 858 (3d Cir. 2019)............................. 12, 13

Lane v. Franks, 573 U.S. 228, 134 S.Ct. 2369 (2014)....................................... 4, 12

Lombardo v. Pa. Dept. of Pub. Welfare, 540 F.3d 190 (3d Cir. 2008) ................. 19

Morris v. Philadelphia Housing Authority, 487 Fed.Appx. 37 (3d Cir. 2012) ....... 11

Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,
    460 U.S. 1, 103 S.Ct. 927 (1983) .................................................. 19

Nationwide Mutual Fire Insurance Co. v. George V. Hamilton, Inc.,
    571 F.3d 299 (3d Cir. 2009) ......................................................... 17

Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002) ..................6

Rockefeller Center Properties, Inc. Sec. Litig.,
    311 F.3d 198 (3d Cir. 2002) .........................................................6

Sanborn v. Postmaster General of U.S., 431 Fed.Appx. 188 (3d Cir. 2011) ........... 9

Sanguigni v. Pittsburgh Board of Public Education,
    968 F.2d 393 (3d Cir. 1992) ........................................... 4, 5, 15, 16

Spring City Corp. v. American Bldgs. Co., 193 F.3d 165 (3d Cir. 1999)...............17

Todora v. Buskirk, 96 A.3d 414 (Cmwlth. Ct. 2014).............................................15

United States v. Joseph, 730 F.3d 336 (3d Cir. 2013) ..............................................9

Yang v. Tsui, 416 F.3d 199 (3d Cir. 2005)...........................................................17

**Statutes**

28 U.S.C. § 1291 ................................................................. 6

28 U.S.C. § 1367(c)(3) .....................................................5, 16

42 U.S.C. § 1983 ..............................................................16

43 P.S. § 1421 ..................................................................19

**STATEMENT OF THE CASE**

## I.    Background

In March 2020, Marcel Nicole Ingram ("Ingram") was assigned by the House Republican Caucus ("HRC") to serve as District Office Manager for Pennsylvania State Representative Eric Davanzo, working from his West Newton, Pennsylvania district office. Appx. 19 at ¶¶ 11, 13. On May 5, 2022, Ingram and her co-worker, Fallyn Weightman, texted Representative Davanzo that the office smelled like raw chicken and was burning their eyes. Appx. 19 at ¶ 17; Appx. 30. Representative Davanzo referred Ingram to the district office's landlord. Appx. 20 at ¶ 20. According to Ingram, the landlord was notified of her complaints on multiple occasions; however, according to Ingram the odors reappeared, and the landlord was unable to locate the source. Appx. 20 at ¶¶ 21-22.

On June 6, 2022, Ingram notified the landlord and Representative Davanzo that there was water coming through the floor at the district office. Appx. 20 at ¶ 25. She also reported the flooding and odor to Lisa Zaucha, the Southwest Regional Coordinator of District Operations for the HRC. Appx. 20 at ¶ 26.

On July 7, 2022, after again complaining of the presence of odors to Ms. Zaucha, Ingram alleges that Ms. Zaucha referred to conducting mold tests as "good advice" and that Ingram would be reimbursed for the costs of tests. Appx. 21 at ¶ 33. Ingram claims that she then purchased two Healthful Home mold tests at Ms.

Zaucha's directive and took them to the district office on July 12, 2022 to utilize them. Appx. 21 at ¶ 34. According to Ingram, the mold tests came back positive for Aspergillus/Penicillium and Staphybotrys. Appx. 21 at ¶ 37. Ingram notified Representative Davanzo of the mold test results when he returned to the office that same day. Appx. 21 at ¶ 41.

In response, Representative Davanzo sent an email noting that his staff's safety is first and foremost. Appx. 32. He stated that he was aware that the staff were complaining of a smell, but his staff never said they felt unsafe working in the district office. Appx. 32. Representative Davanzo expressed his frustration that there would not be an easy solution if the district office did in fact have mold. Appx. 22 at ¶ 48.

On July 19, 2022, Ingram was terminated from her employment with the HRC. Appx. at ¶ 57-61. She was notified that her termination was due to violations of the HRC's conduct/discipline and annual leave policies. Appx. at ¶ 66.

## II.    Procedural History

Ingram filed a Complaint against the Honorable George Dunbar, the Honorable Eric Davanzo, Jacob Smeltz, Jordan Gouker, William Schaller, Lisa Zaucha, Alicia McGhee, Jill Vecchio, Esq., and Candice Mitchell (collectively the "House Officials") on November 11, 2022.[1] The House Officials moved to dismiss

---

[1] This litigation began with the filing of a Complaint against the HRC alleging a single violation of the Whistleblower Law based upon the identical set of facts, before the Court of Common Pleas of Westmoreland County. Subsequent to the

Ingram's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 6, 2023, Ingram filed her First Amended Complaint. Because the Amended Complaint failed to remedy Ingram's inability to state a claim upon which relief may be granted, the House Officials again moved for dismissal pursuant to Rule 12(b)(6).

By judgement entered on April 13, 2023, the District Court granted the House Officials' Motion to Dismiss pursuant to Rule 12(b)(6) and dismissed Ingram's Section 1983 claims. The District Court declined to exercise jurisdiction over Ingram's Pennsylvania Whistleblower Law claims and dismissed them without prejudice to her right to refile those claims in the appropriate court. Appx. 2-3.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's judgment because Ingram was neither speaking as a private citizen, nor speaking on a matter of public concern when she reported concerns relating to mold at the district office for which she was the District Office Manager. Ingram was speaking as a public employee because her speech – reports of the presence of mold in the district office that she managed

---

HRC filing preliminary objections, Ingram discontinued the common pleas litigation and refiled before the Pennsylvania Commonwealth Court on November 15, 2022, just days after filing the federal action that is the basis for this appeal. The Commonwealth Court matter remains pending.

– would ordinarily fall within the scope of her duties to oversee the safety and habitability of the office. <u>Lane v. Franks</u>, 573 U.S. 228, 240, 134 S.Ct. 2369 (2014). She reported this information through her chain-of-command and as an extension of her duties. The fact that she is not specifically paid to make complaints regarding mold does not create a factual dispute. Instead, the District Court appropriately gave Ingram's conclusory allegations within the First Amended Complaint the weight they deserved and utilized its common sense to hold that Ingram's speech was part and parcel to her ordinary job duties of overseeing the district office. <u>De Ritis v. McGarrigle</u>, 861 F.3d 444 (3d Cir. 2017).

However, even if Ingram's speech could be considered citizen speech, the District Court's judgment should be affirmed because she was not speaking on a matter of public concern. In reviewing the content, form, and context of Ingram's mold complaints, it is clear that the general public would have no interest or concern about her speech. <u>Connick v. Myers</u>, 461 U.S. 138 (1983). Rather, complaints regarding the safety of the office or conditions of employment at the district office are personal matters. <u>See</u> <u>Gaj v. United States Postal Service</u>, 800 F.2d 64, 67 (3d Cir. 1986). When an employee's complaints are made to protect their own interests, complaints about safety matters and working conditions are not considered matters of public concern. <u>Sanguigni v. Pittsburgh Board of Public</u>

Education, 968 F.2d 393, 399 (3d Cir. 1992). Accordingly, the District Court's

dismissal of the First Amendment claims is appropriate and should be affirmed.

Further, the District Court's dismissal of the Pennsylvania Whistleblower

claim was not an error of law. Because no federal claims remained following

dismissal of the First Amendment claims, the trial court's decision to decline

supplemental jurisdiction over the Pennsylvania Whistleblower Law claim was

proper. A district court may decline supplemental jurisdiction where it has

dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).

Yet, even if the District Court had not declined to exercise supplemental

jurisdiction, dismissal of the Whistleblower Law claim is appropriate because the

House Officials are entitled to Eleventh Amendment immunity from suit in federal

court. The Whistleblower Law does not expressly abrogate the state's Eleventh

Amendment immunity from suit in federal court within its text or legislative

history.  Bradley v. W. Chester Univ. of the Pa. State System of Higher Educ., 182

F.Supp. 3d 195 (E.D. Pa. 2016).

Additionally, where, as here, Ingram has filed an identical Whistleblower

Law claim against the HRC based upon the identical set of facts before the

Commonwealth Court, she has a parallel proceeding which presents the

"extraordinary circumstances" for dismissal contemplated by Colorado River and

its progeny. See Colorado River Water Conservation District v. United States, 414

U.S. 800 (1986). Accordingly, refusal to exercise jurisdiction on either ground is proper and the order dismissing the Whistleblower claim should be affirmed.

## ARGUMENT

### I.    Jurisdiction And Standard of Review.

Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over the final judgment of the District Court. The District Court granted the House Officials' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6). The Court's review of a decision dismissing a complaint is plenary. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). The Court must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002). In doing so, it must be determined whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). In viewing all well-pled allegations in the First Amended Complaint as true and drawing all reasonable inferences against the House Officials, there is no reasonable reading of the First Amended Complaint that would entitle Ingram to relief. Therefore, the District Court's judgement should be affirmed.

**II.      Ingram's Speech Is Not Protected by the First Amendment.**

The District Court did not err in holding that Ingram's speech reporting the presence of mold in the workplace was part of her routine official duties as Office Manager and is not protected by the First Amendment. In order to state a claim for retaliation pursuant to the First Amendment, a public employee must prove that (1) they spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Public employees do not speak "as a citizen" for purposes of the First Amendment when their statement is made "pursuant to [their] official duties." Id. at 421. Whether a matter is of public concern is an issue of law for the court to decide. Hill v. Borough of Kutztown, 455 F.3d 255, 241 (3d Cir. 2006). The Court will examine the content, form and context of the statement. Connick v. Myers, 461 U.S. 138 (1983).

**A.      Ingram's speech regarding workplace concerns was pursuant to her official duties as a public employee.**

As the District Office Manager for Representative Davanzo's district office, Ingram's complaints regarding the worksite and its fitness for use by HRC employees were made pursuant to her official duties, and therefore the District

Court correctly held that they are not afforded the protections of the First Amendment.

### i. The District Court conducted a particularized examination of Ingram's speech.

Contrary to Ingram's allegations in this appeal, the District Court examined and addressed all of Ingram's allegedly protected speech – complaints regarding the presence of mold in the district office. Ingram's argument that she has alleged three categories of speech is not only a gross overstatement, but also an expansion of the argument made in the court below. No such categories were asserted previously in this litigation. Instead, Ingram very specifically pleaded within her First Amended Complaint that "[i]n reporting the presence of toxic mold, Ingram spoke as a citizen on a matter of public concern—constitutionally protected conduct." Appx. 26 at ¶ 75. No other "categories" of speech were raised within her First Amended Complaint. See Appx. 17-28.

Even while opposing the House Officials' Motion to Dismiss Ingram did not raise that she had been retaliated against for exercising protected speech in three separate categories. Rather, she focused on one: her report of mold. See Appx. 71 (referring to her protected speech as "speech regarding the presence of toxic mold in the District Office"); Appx. 72 (discussing her speech as "reports of toxic mold, made to protect herself, her colleagues, and the public"); Appx. 73 ("reported the

mold at the time it was discovered with the goal of raising awareness of the problem"); and Appx. 73 (arguing that Ingram's speech was protected because her "official duties did not include testing for mold and reporting on its presence"). This Court should refuse to consider these new arguments for the first time on appeal. Appellate courts will typically refuse to consider issues not raised by the parties in the court below. Dennis v. City of Philadelphia, 19 F.4th 279, 287 (3d Cir. 2021); see also Sanborn v. Postmaster General of U.S., 431 Fed.Appx. 188 (3d Cir. 2011) (declining to consider arguments presented on appeal that were not initially presented to the district court). "Although the parties are precluded from raising new arguments, they may 'place greater emphasis' on an argument or 'more fully explain an argument on appeal.'" Dennis, 19 F.4th at 287 quoting United States v. Joseph, 730 F.3d 336, 341 (3d Cir. 2013). However, to preserve an argument, it must have been "unequivocally put" before the trial court. Id. Ingram has not unequivocally alleged separate instances or categories of speech. Rather, she alleged her report of mold was the catalyst for her termination. See Appx. 25 at ¶ 75; Appx. 71-73.

Even if this Court reviews these new arguments as a reframing of the original argument, all of Ingram's speech can be fairly encompassed as workplace complaints related to the presence of mold. Whether Ingram's speech regarding mold was about the smells within the office, the test results, or mold remediation,

there is no need to parse them out as such. Each was an extension of Ingram's Office Manager duties. And all were included in the District Court's examination of "speech regarding the mold at the District Office." Appx. 10. As a result, the District Court appropriately held that "[a]ll such activities occurred within the context of Ms. Ingram's job as Representative Davanzo's District Office Manager." Appx. 11.

### ii. The District Court did not make improper findings of fact.

When deciding a motion to dismiss under Rule 12(b)(6), a district court may not make findings of fact or resolve a factual dispute where one exists. See Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462 (3d Cir. 2011) (holding that district court may not make independent findings of fact when deciding a Rule 12(b)(6) motion). However, "bare assertions," "formulaic recitations of the elements" and conclusory allegations are not entitled to an assumption of the truth. Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 663-64. Here, there is no actual dispute of fact regarding Ingram's job responsibilities. Rather, the position name – Office Manager - reveals that her routine job duties included management of the office which would commonly include oversight of both the physical space and

personnel. To that end, reporting her suspicions of mold through her chain of command, the alleged discovery of mold, or coordinating remediation with the landlord are all clearly an expectation of an Office Manager. See Morris v. Philadelphia Housing Authority, 487 Fed.Appx. 37 (3d Cir. 2012) (holding that executive assistant's objection to lawsuit and embezzlement reports to the executive director were part of his official duties and not protected speech). In so holding, the District Court did not resolve a factual dispute.

Ingram has, however, attempted to conflate the issue in an effort to create a dispute where none exists. She argues that her job duties "did not include reporting on mold-related matters." Appellant's Brief at pg. 17. In attempting to create such a narrow interpretation of her duties, Ingram fails to see the forest for the trees. Even if specifically reporting on mold-related matters is not understood by Ingram to have been within her job duties, it is certainly encompassed in the broader duty of reporting on the day-to-day safety of the District Office and personnel that she managed. Reasonableness and common sense require that the broader scope of duties may encompass those tasks that were not previously anticipated or foreseen, but generally covered in the rational expectations of a position. If the District Courts cannot reach such commonsense conclusions, every ruling on a First Amendment case in the employment context will be ripe for appeal. Because Ingram's speech was about working conditions within the district office for which

she was expected to oversee, the District Court did not err in finding that her

speech was made as a public employee, not as a private citizen.

### iii.   The District Court applied controlling legal precedent.

In analyzing whether Ingram's speech was that of a public employee or a

private citizen, the District Court applied controlling precedent. The Court

analyzed "whether the speech at issue is itself ordinarily within the scope of an

employee's duties, not whether it merely concerns those duties." Lane v. Franks,

573 U.S. 228, 240, 134 S. Ct. 2369 (2014). In reaching its determination, the

District Court discussed that:

> At the time Ms. Ingram made her alleged protected speech, Ms. Ingram served
> as Representative Davanzo's District Office Manager…After reporting the
> odors up the HRC chain-of-command, Mr. Mann and Ms. Zaucha directed
> Ms. Ingram to purchase mold test kits and test the office for mold…While at
> work on July 12, 2022, Ms. Ingram conducted the mold tests at the District
> Office, which eventually came back positive.
>
> ***
>
> Ms. Ingram was ordered to conduct the mold tests with the permission of her
> superiors at the HRC. Ms. Ingram's decision impacted the employees at
> Representative Davanzo's District Office. Ms. Ingram's speech directly
> related to matters within the scope of her position as a HRC employee. As
> such, Ms. Ingram's speech was made as a HRC employee concerning working
> conditions at Representative Davanzo's District Office, not as a public citizen.

Appx. 10-11.

As analyzed by this this Court in Javitz v. County of Luzerne, *why* Ingram

spoke, *who* she spoke to, as well as *what* she spoke about, is relevant to

determining whether there is evidence of citizen speech. <u>Javitz v. County of Luzerne</u>, 940 F.3d 858 (3d Cir. 2019). In <u>Javitz</u>, this Court held that the employee spoke as a citizen because the speech fell outside the scope of the employee's duties as the Director of Human Resources when she reported to the District Attorney her belief that she was the victim of a crime. <u>Id</u>. The instant matter is distinguishable. Whereas the District Attorney was not within Javitz's reporting structure, here, as the District Court noted, Ingram complained of the mold issues to those in her chain-of-command. Appx. 11. Additionally, the subject of Javitz's speech – reporting a crime – was not within her ordinary job duties, but rather related to an occurrence at work. <u>Javitz</u>, 940 F.3d at 866. On the other hand, the subject of Ingram's speech – safety and cleanliness of the district office - was squarely within her ordinary job duties. Finally, "the *why*" of Javitz's speech, an investigation into an alleged criminal action of a public employee, fell within the core of speech that is of general interest and concern to the public. <u>Id</u>. However, the presence of mold in a government office where the public only occasionally visit, is not a matter of general interest or concern of the public. It is, instead, a private workplace grievance - not citizen speech. Such grievances are best left to the government employer to attend to for administrative efficiency rather than becoming a federal case. <u>Garcetti</u>, 547 U.S. at 418.

Ingram incorrectly argues that to be an ordinary job duty, there must be evidence that she was specifically "**paid** to make complaints to Ms. Zaucha regarding mold-related issues…to report the results of mold tests, [or] discuss mold remediation with the District Office's landlord." Appellants Brief at pg. 23 (emphasis added). This is not the legal standard. Taking such a narrow position ventures into absurdity. Speech does not have to stem from only duties listed within a formal job description to fall outside the First Amendment's protections. See Garcetti, 547 U.S. at 424-25.  If that were so, the majority of tasks performed by an employee throughout the workday would be considered to fall outside their ordinary duties and discussion of it would be protected speech. For example, one will not find rumormongering with other attorneys while in court listed as a duty on an attorney job description that they are specifically paid for. However, as this Court held in De Ritis v. McGarrigle, the overarching job duty that encompasses such communication is the attorney's "in-court obligations to build rapport with the Court and other attorneys." De Ritis, 861 F.3d at 453 (internal quotation omitted). In that case, because a public defender's rapport-building conversations with judges and other attorneys just before or after a case proceeding are "part and parcel of [a public defender's] ordinary job duties," his complaints regarding his beliefs about his demotion were made as a public employee, not a private citizen. Like the employee within De Ritis, Ingam's reports regarding mold are part and

parcel of her ordinary job duties of overseeing the general habitability of the district office. She was therefore speaking as a public employee. In reaching this conclusion, the District Court followed the correct legal precedent, and the judgment should be affirmed.

### B.    Ingram was not speaking on a matter of public concern.

If this Court should find that Ingram was speaking as a private citizen rather than as a public employee, her speech is still not a protected activity because it does not involve a matter of public concern. Garcetti at 418. Whether a matter is of public concern is determined by examining the content, form, and context of a statement. Connick, 461 U.S. at 138. In the instant case, Ingram's speech regarding the presence of mold, or even mold remediation, at her worksite is not of public concern. When an employee's complaints are made to protect their own interests, complaints about safety matters and working conditions are not considered matters of public concern. Sanguigni, 968 F.2d at 399.

In this case, Ingram's mold complaint was not made to resolve an issue impacting the lives of others or the public. Rather, Ingram's complaint to Representative Davanzo regarding mold concerned only Ingram's own interests. Even assuming, arguendo, that Ingram was interested in protecting the interests of other employees at the district office, she has still not established that her speech was a matter of public concern rather than dissatisfaction with the conditions of

employment. <u>See</u> <u>Gaj v. United States Postal Service</u>, 800 F.2d 64, 67 (3d Cir. 1986) (holding that safety complaints regarding the noise level and conveyor belt maintenance were not a matter of public concern but were merely an employee dissatisfied with his own conditions of employment).

In short, Ingram's speech concerned internal office affairs, which do not enjoy First Amendment protection. It did not "'touch on broad or social policy issues' or implicate the discharge of public responsibilities by an important government office, agency, or institution," which it must, in order to be deemed protected speech. <u>Gorum v. Sessoms</u>, 561 F.3d 179, 187 (3d Cir. 2009) (quoting <u>Sanguini</u>, 968 F.2d at 397). As such, she was not speaking as a citizen on a matter of public concern and the District Court's dismissal of the First Amendment claims should be affirmed.

## III. The District Court properly declined to exercise supplemental jurisdiction.

The District Court properly declined to exercise supplemental jurisdiction over the Pennsylvania Whistleblower Law claim. Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim…if the district court has dismissed all claims over which it has original jurisdiction." Here, upon dismissal of Ingram's 42 U.S.C. § 1983 claims, there were no remaining claims over which the District Court had original jurisdiction. Further, there was no affirmative justification for retaining supplemental

jurisdiction where Ingram was permitted to refile in the appropriate court. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Alternatively, abstaining from exercising supplemental jurisdiction over the Whistleblower Law claim is also proper based upon the Colorado River doctrine. See Colorado River Water Conservation District v. United States, 414 U.S. 800 (1986). The Colorado River doctrine permits courts to abstain from jurisdiction by staying or dismissing a pending federal action in favor of a parallel state court proceeding. Nationwide Mutual Fire Insurance Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009). Proceedings are generally considered "parallel" when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues." Yang v. Tsui, 416 F.3d 199, 205 n. 5 (3d Cir. 2005). Here, the within Whistleblower Law claim is identical to the facts and theories alleged by Plaintiff in her state court proceeding. See Ingram v. Pennsylvania House Republican Caucus, No. 546 MD 2022 (Cmwlth. Ct.).

As the proceedings are parallel, the Court must then consider whether the following "extraordinary circumstances" meriting abstention are present:

> (1) Which court first assumed jurisdiction over property involved, if any; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court proceedings would adequately protect the rights of the parties.

Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999). "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colorado River, 424 U.S. at 818-19. The balancing is weighted heavily in favor of exercising jurisdiction. Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 16, 103 S.Ct. 927 (1983). In this matter, several factors weigh in favor of abstention.

Here, three factors weigh heavily in favor of abstention. The third factor, the desirability of avoiding piecemeal litigation, was "[b]y far the most important factor" in the Colorado River decision itself. Moses H. Cone, 460 U.S. at 16. Here, there is great risk of piecemeal litigation if these parallel cases were permitted to continue. The Commonwealth Court case deals solely with the Whistleblower claim. Ingram's claim in the First Amended Complaint is entirely duplicative, including the requested relief. The parties' efforts would therefore likewise be duplicative in litigating this claim on two fronts. The fifth factor similarly weighs in favor of abstention as the claim at issue is a state law claim pursuant to the Pennsylvania Whistleblower Law. Finally, the sixth factor – whether the state court proceeding would adequately protect the parties' rights – weighs in favor of abstention. There is no argument to be made against the Commonwealth Court's ability to adequately protect the rights of the parties in a state law claim already pending within its original

jurisdiction. Accordingly, the <u>Colorado River</u> doctrine weighs in favor of abstention and the District Court's dismissal of the Whistleblower Law claim is proper.

## IV.    The House Officials are immune from suit in federal court pursuant to the Whistleblower Law.

Even if the District Court had not declined to exercise supplemental jurisdiction, dismissal of the Whistleblower Law claim is appropriate because the House Officials are entitled to Eleventh Amendment immunity from suit in federal court. The House Republican Caucus and its employees, as part of the House of Representatives, are entitled to immunity under the Eleventh Amendment to the U.S. Constitution. <u>Arrington v. Commonwealth House of Representatives</u>, No. 10-CV-2248, 2010 U.S. Dist. LEXIS 119315, *3-4 (M.D. Pa. Nov. 10, 2010). Pursuant to the Eleventh Amendment, although state agencies and employees may be sued under the Whistleblower Law, 43 P.S. § 1421, et seq., the statute does not expressly abrogate the state's Eleventh Amendment immunity from suit in federal court.[2] <u>Aguilar v. Pa. Apple Marketing Program</u>, No. 1:05-CV-0804, 2006 U.S. Dist. LEXIS 96074 (M.D. Pa. Jan. 19, 2006). "[A] state may consent to suit by making a clear declaration that it intends to submit itself to federal court jurisdiction." <u>Lombardo v. Pa. Dept. of Pub. Welfare</u>, 540 F.3d 190, 195-96 (3d Cir. 2008). Yet,

---

[2] While Section 1983 draws a distinction between suits against individuals in their individual versus official capacities, neither the Supreme Court nor this Court have created a similar distinction for state law claims. There is likewise no such distinction within the language of the Whistleblower Law.

no clear showing of such a declaration exists within either the text of the Whistleblower Law itself or its legislative history. <u>Bradley v. W. Chester Univ. of the Pa. State System of Higher Educ.</u>, 182 F.Supp. 3d 195 (E.D. Pa. 2016). Pennsylvania has not agreed to waive its Eleventh Amendment immunity in enacting the Whistleblower Law and, as a result, the District Court lacks jurisdiction to hear Ingram's claim under the Whistleblower Law. Accordingly, the District Court's refusal to exercise jurisdiction should be affirmed.

## CONCLUSION

The Court should affirm the District Court's judgment ordering dismissal of both Ingram's First Amendment and Pennsylvania Whistleblower claims based upon the foregoing reasons.

Respectfully submitted,

**MCNEES WALLACE & NURICK LLC**

By:   <u>*/s/M. Abbegael Giunta*</u>
M. Abbegael Giunta
PA I.D. No. 94059
Adam S. Santucci
PA I.D. No. 307058
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
agiunta@mcneeslaw.com
asantucci@mcneeslaw.com

Dated:  August 9, 2023                    *Attorneys for Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 4,692 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

**ELECTRONIC DOCUMENT CERTIFICATE**

Pursuant to Third Circuit Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text in the paper copies.

The brief was scanned for viruses using Microsoft Defender for Endpoint and no viruses were detected.

**CERTIFICATE OF BAR ADMISSION**

Pursuant to Third Circuit Local Appellate Rule 28.3(d), I certify that I am a member of the bar of the United States Court of Appeals for the Third Circuit.

Dated:        August 9, 2023            *s/M. Abbegael Giunta*
                                        M. Abbegael Giunta
                                        *Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk for the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on this 9th day of August 2023. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*s/M. Abbegael Giunta*
M. Abbegael Giunta